FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2014 MAR -3 AM 9: 34

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

HENRY MICKLEONARD MCGEE,    )
                            )
            Petitioner,     )
                            )
        v.                  )    CV 112-178
                            )    (Formerly CR 109-035 & CR 110-073)
UNITED STATES OF AMERICA,    )
                            )
            Respondent.     )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate confined to federal custody at FCI Jesup in Jesup, Georgia, has

filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his

sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that

the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be

**CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Charged in Two Separate Cases

Petitioner was indicted in two federal cases in 2009 and 2010. In the first, he was

charged, along with two co-defendants, with knowingly and intentionally distributing

approximately 69.94 grams of cocaine base, a Schedule II Controlled Substance, in violation

of 21 U.S.C. § 841(a)(1). United States v. McGee, CR 109-035, doc. no. 1 (S.D. Ga. Mar.

5, 2009) (hereinafter "CR 109-035"). In the second, Petitioner was indicted on four counts:

One and Two, Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C.

§§ 922(g)(1), 922(g)(9), and, Three and Four, Possession of Stolen Firearms, in violation of 18 U.S.C. § 922(j). United States v. McGee, CR 110-073, doc. no. 1 (S.D. Ga. Mar. 4, 2010) (hereinafter "CR 110-073"). The events alleged in the second case occurred while Petitioner was on pre-trial release for the first case. See id.

Petitioner, who was originally represented by appointed counsel Robert J. Lowe, Jr., in both cases, first pled guilty to Count One in CR 109-035 without a plea agreement. CR 109-035, doc. no. 99. However, he subsequently moved to withdraw that guilty plea, and United States District Judge J. Randal Hall granted his motion on May 26, 2010. Id., doc. nos. 106, 118. Meanwhile, Petitioner filed a *pro se* motion requesting that Mr. Lowe be allowed to withdraw in CR 109-035, and Mr. Lowe filed a motion to withdraw in CR 110-073, both of which were granted. CR 109-035, doc. nos. 113, 119; CR 110-073, doc. nos. 32, 35. Attorney James Pete Theodocion was thereafter appointed to represent Petitioner in both cases. CR 109-035, doc. nos. 119, 124; CR 110-073, doc. nos. 35, 38.

### B. Plea Agreements Reached with Government

After Mr. Theodocion's appointment, Petitioner reached negotiated plea agreements with the government in both cases. CR 109-035, doc. no. 128; CR 110-073, doc. no. 42. On July 22, 2010, Judge Hall held a change of plea hearing for both cases. Petitioner pled guilty to unlawfully, knowingly, and intentionally distributing over 5 grams of cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), which was a lesser included felony offense of Count One in CR 109-035. CR 109-035, doc. nos. 126-28; see also CR 110-073, doc. no. 60 (hereinafter "Rule 11 Tr."). Petitioner also pled guilty to Counts One and Three of the indictment in CR 110-073, Possession of a Firearm by a

2

Prohibited Person and Possession of a Stolen Firearm, in exchange for the government's agreement to dismiss Counts Two and Four in that case. CR 110-073, doc. nos. 40-43.

During the change of plea hearing, Judge Hall reviewed the charges in both indictments and the possible penalties. Rule 11 Tr., pp. 4-6, 26-31. Judge Hall informed Petitioner of the minimum five-year sentence and maximum forty-year sentence of imprisonment in CR 109-035, and the maximum ten-year sentence of imprisonment on each count in CR 110-073; when asked if he understood the possible penalties, Petitioner affirmed that he did. Id. at 29-30. Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed that he clearly understood those rights.[1] Id. at 11-13. Petitioner further testified under oath that he understood what he was being charged with and had discussed and reviewed the charges and plea agreements with Mr. Theodocion. Id. at 26-27.

By signing the plea agreements, Petitioner also confirmed that he had discussed with Mr. Theodocion the right to plead not guilty and have a trial, as well as the relative benefits of a trial versus a guilty plea entered pursuant to the plea agreements. CR 109-35, doc. no. 128, p. 8; CR 110-073, doc. no. 42, p. 7. Additionally, Judge Hall reviewed the elements of the charges to which Petitioner was pleading guilty and explained that the government would have to prove those elements beyond a reasonable doubt in order to obtain convictions. Rule 11 Tr., pp. 13-15. Petitioner affirmed that he understood the elements and the government's

---

[1]Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, the right to remain silent, the right to appeal any verdict reached at trial, and the right to the assistance of lawyer without charge. Rule 11 Tr., pp. 11-13.

burden of proof, as well as affirmed the factual basis for the guilty pleas presented at the Rule 11 proceeding.[2] Id. at 14-25.

Additionally, Judge Hall thoroughly reviewed with Petitioner the terms of each plea agreement. In particular, Petitioner's plea agreements each included a broad appeal and collateral attack waiver: "the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground" except that a direct appeal of the sentence could be filed if the sentence exceeded the statutory maximum or if the sentence exceeded the United States Sentencing Guidelines ("Guidelines") range, because of a variance or upward departure, as determined by the sentencing judge. CR 109-35, doc. no. 128, p. 4; CR 110-073, p. 2. Judge Hall specifically reviewed the appeal and collateral attack waiver provisions in each plea agreement: "[Y]ou've agreed to voluntarily and expressly waive your right to appeal your conviction and sentence and the right to collaterally attack your conviction and sentence in a post-conviction proceeding" unless the sentence imposed was greater than the law allows or above the upper end of the range provided by the Guidelines. Rule 11 Tr., pp. 26, 28. Petitioner confirmed that he had agreed to the terms described by Judge Hall. Id. at 27, 28.

Judge Hall went on to explain the advisory nature of the Guidelines and confirmed that Petitioner had discussed the Guidelines with Mr. Theodocion. Id. at 32-33. Immediately

---

[2]Michael Dodaro, an officer with the Drug Enforcement Agency Task Force in Augusta, Georgia, and Sergeant Dan Carrier with the Richmond County Sheriff's Office and attached to the Bureau of Alcohol, Tobacco, Firearms, and Explosives at the time of the Rule 11 hearing, provided the factual basis for the guilty pleas. Rule 11 Tr., pp. 16-24.

thereafter, Judge Hall asked, "Did anyone promise, predict, or make a prophecy that you would receive a specific sentence in this case?"; Petitioner answered, "No, sir." Id. at 33. Indeed, each plea agreement contained a provision stating that the sentencing court was free to impose any sentence authorized by law up to the statutory maximum, and that Petitioner had no other agreements, understanding, or deals with any person other than what was set forth in the written plea agreement. CR 109-35, doc. no. 128, pp. 5, 9; CR 110-073, doc. no. 42, pp. 4, 7, 8. Judge Hall also specifically inquired of Petitioner whether he had been promised anything other than what was contained in the plea agreements; Petitioner responded that he had not been made any other promises. Rule 11 Tr., p. 29. Additionally, Petitioner swore to Judge Hall that no one had forced or pressured him to plead guilty. Id. at 33.

Having conducted a thorough colloquy with Petitioner and having established a factual basis for the pleas, Judge Hall asked Petitioner if he still wanted to plead guilty to Counts One and Three of CR 110-073 and to a lesser included offense of Count One in CR 109-035, to which Petitioner stated, "Yes, sir." Id. at 34. Judge Hall then summarized the proceedings as follows:

> The defendant, Henry Mickleonard McGee, is competent. He fully understands the charges against him. There is a factual basis for the charges against him. There is a factual basis for his pleas of guilty. He knows the maximum punishment that could be imposed on each charge and he knows his jury rights, which have been knowingly and voluntarily waived.
>
> I further find that Mr. McGee's decision to plead guilty this morning, was voluntary, knowing, and not the result of any force, pressure, threats, or promises, other than the promises made by the Government in the plea agreements.

> Therefore, Mr. McGee is adjudged guilty, as set forth by the Clerk, based upon his pleas of guilty.

Id. at 35.

## C.    Sentencing and Appeal

As Judge Hall explained prior to accepting Petitioner's guilty pleas at the Rule 11 proceeding, (id. at 31), one, combined Presentence Investigation Report ("PSI") was prepared for sentencing in both cases. The PSI set the advisory Guidelines range for imprisonment at 151 to 188 months. PSI ¶ 78. At the sentencing hearing for both cases, Judge Hall reviewed in detail the findings and conclusions in the PSI and heard from both counsel for the government and for the defense before adopting the conclusions and the Guidelines applications in the PSI, subject to one modification regarding the number of weapons attributed to Petitioner.[3] CR 110-073, doc. no. 61 (hereinafter "Sent. Tr."), pp. 25-36. When hearing from the defense regarding mitigation of sentence, Judge Hall conducted detailed discussions with counsel regarding any assistance Petitioner provided that might warrant a motion from the government for reduction of sentence and concluded that the government had done all it had agreed to do under the plea agreements; the discussion included details of the negotiation process starting from the first, withdrawn guilty plea in CR 109-035. Id. at 36-44. When specifically asked if he had anything to say to Judge Hall, Petitioner said nothing. Id. at 43, 47. After the government argued for a sentence at the high end of the Guidelines range, Mr. Theodocion spoke again on Petitioner's behalf, outlining yet again

---

[3]Judge Hall noted, however, that the downward adjustment of the number of weapons made no discernable difference to the Guidelines recommendation because the reduced number still fell within the same range calling for a six-level enhancement. Sent. Tr., p. 35.

6

reasons for giving Petitioner a sentence at the lower end of the Guidelines range. Id. at 48-50.

Judge Hall sentenced Petitioner in the lower middle range, *inter alia*, to a total term of 168 months of imprisonment; that term included 168 months for the offense in CR 109-035, and 120 months for each of the two offenses in CR 110-073, with all sentences to be served concurrently. Id. at 51. An identical judgment bearing both case numbers was entered in each case. CR 109-035, doc. no. 133; CR 110-073, doc. no. 47. Petitioner then filed a *pro se* notice of appeal with the Eleventh Circuit Court of Appeals which was captioned and docketed in CR 110-073, and the Court of Appeals appointed counsel, Colette R. Steel, to represent Petitioner on appeal.[4] CR 110-073, doc. nos. 48, 57. Upon review of Petitioner's case, Ms. Steel reached "the inescapable conclusion that the waivers of appeal which [Petitioner] entered into in your plea agreement and affirmed at the plea colloquy are valid." CR 109-035, doc. no. 142, Ex. A, p. 3; CR 110-073, doc. no. 67, Ex. A, p. 3.[5] Ms. Steel stated that she did not believe Petitioner had a right to appeal or that any error occurred that may reverse his case, but she did advise Petitioner that the case law was "more generous" with respect to waivers of collateral relief under 28 U.S.C. § 2255; in particular, Ms. Steel provided Petitioner a road map for claiming that his "trial attorney's pre-plea advice was deficient." CR 109-035, doc. no. 142, Ex. A, p. 3; CR 110-073, doc. no. 67, Ex.

---

[4]As had Petitioner's first appointed counsel, Mr. Theodocion also eventually filed a motion to withdraw as counsel, which Judge Hall granted. CR 109-035, doc. nos. 136, 137; CR 110-073, doc. no. 53.

[5]Petitioner filed the letter from Ms. Steel as an exhibit to his first § 2255 motion. See Part I.D, *infra.*

A, p. 3. Consistent with Ms. Steel's advice, Petitioner voluntarily dismissed his direct appeal at the Eleventh Circuit. CR 110-073, doc. no. 65. He then set out to collaterally attack his convictions and sentence.

### D.    § 2255 Proceedings

Petitioner filed his first motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 in this Court on November 28, 2011. See McGee v. United States, CV 111-192, doc. no. 1 (S.D. Ga. Nov. 28, 2011) (hereinafter "CV 111-192"). In his § 2255 motion in CV 111-192, Petitioner claimed that, for numerous reasons, he had ineffective assistance of counsel on appeal, had ineffective assistance of trial counsel at sentencing, and that the entry of his guilty pleas was not knowing and voluntary.[6] See generally id. at 14-26. After being directed to a file a response, the government filed a motion to dismiss, contending that Petitioner was barred from seeking relief under § 2255 by the appeal and collateral attack waivers in his plea agreements, that his guilty pleas were knowing and voluntary, and that the government did not breach the plea agreement. See id., doc. no. 3, pp. 10-20. Thereafter, Petitioner submitted a motion to voluntarily dismiss his § 2255 motion, which the Court granted in an Order dated August 17, 2012, dismissing the motion without prejudice and closing the case. See id., doc. nos. 9, 10.

After dismissing his first § 2255 motion, Petitioner filed the instant § 2255 motion claiming that his guilty pleas and appeal waiver were involuntarily entered because of the

---

[6]After filing his original § 2255 motion, Petitioner moved to add another claim of ineffective assistance of counsel related to the knowing and voluntary nature of his guilty pleas. CV 111-192, doc. no. 5. As discussed in more detail above, the Court did not address the substance of any of Petitioner's claims in CV 111-192 because he voluntarily dismissed the case.

following instances of ineffective assistance of counsel:

> 1) Petitioner was misadvised about the comparable sentencing ranges of pleading guilty versus going to trial;

> 2) Petitioner was misadvised about an acceptance of responsibility reduction at sentencing; and

> 3) Petitioner was misadvised about the sentencing scheme to be followed for sentencing in two cases.

(Doc. no. 1, p. 4.) Petitioner requests the following relief: "vacatur of sentences imposed; vacatur of guilty plea; vacatur of appeal waiver; and appointment of counsel for further criminal proceedings." (Id. at 13.) The government first moved to dismiss the § 2255 motion as untimely, but Judge Hall denied that request and directed the government to file a response. (See doc. nos. 3, 7, 9.) Respondent concedes that "[a]s carefully structured" by Petitioner, his current ineffective assistance of counsel claims are not barred by the collateral attack wavier in his plea agreements, but Respondent argues that Petitioner's claims fail on the merits. (See doc. no. 10.) The Court resolves the matter as follows.

## II.    DISCUSSION

### A.    No Need For Evidentiary Hearing

Petitioner did not explicitly request an evidentiary hearing in his § 2255 motion. However, when Respondent argued that Petitioner's claims were devoid of sufficient detail to justify an evidentiary hearing, (see, e.g., doc. no. 10, p. 5), Petitioner responded with a reply that purports to fill the factual void (doc. no. 11), presumably in the hopes of creating a factual dispute that would necessitate a hearing.[7]

---

[7]For the sake of completeness, the Court notes that neither Mr. Theodocion's declaration nor Petitioner's reply were submitted as notarized affidavits. However, Mr. Theodocion's

9

Section 2255 does not require that the Court hold an evidentiary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). As the Eleventh Circuit has explained, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (*per curiam*); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that a petitioner is not entitled to an evidentiary hearing if his "claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citing Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*en banc*)). With regard to ineffective assistance of counsel claims, the Eleventh Circuit has recognized that an evidentiary hearing "is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id.

As described in detail below, the Court finds that, regardless of the dueling

---

dated declaration complies with the requirements of 28 U.S.C. § 1746 in that he declared under penalty of perjury that his four-paragraph declaration was true and correct. (Doc. no. 10, Ex. A, p. 2.) Petitioner's dated reply does not contain the statement that this submission is true and correct. Rather, in only select portions of the reply, he "declare[s] under the penalty of perjury" that (1) had counsel told him he could receive a sentence of 168 months after pleading guilty, he would have insisted on a trial; and (2) Mr. Theodocion's declaration is "misleading and inaccurate," although he fails to explain how so. (Doc. no. 11, ¶¶ 6, 7.)

submissions of Mr. Theodocion and Petitioner regarding counsel's advice (compare doc. no. 10, Ex. A with doc. no. 11), Petitioner's claims lack merit as a matter of law and/or are otherwise affirmatively contradicted by the record. Thus, the Court **REPORTS** and **RECOMMENDS** that this matter be resolved without an evidentiary hearing.

### B.    Petitioner Knowingly and Voluntarily Agreed to the Collateral Attack Waiver

It is well settled that a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[8] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the collateral attack waiver in this case is valid. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

---

[8] Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004).

Here, the record confirms the existence of a valid collateral attack waiver. The plea agreements signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack the sentence and conviction "in any post-conviction proceeding, including a § 2255 proceeding" except for certain conditions that did not apply to the sentence imposed by Judge Hall. CR 109-035, doc. no. 128, p. 4; CR 110-073, doc. no. 42, p. 2.) Moreover, Judge Hall thoroughly reviewed the terms of the plea agreements during the plea colloquy, including the appeal and collateral attack waiver provisions in each agreement. Rule 11 Tr., pp. 26, 28. After Judge Hall concluded his review of the terms of the plea agreements, Petitioner acknowledged that he understood and agreed with the terms as explained by Judge Hall. Id. at 27, 28.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court therefore demonstrates that the collateral attack waiver was knowing, voluntary, and valid. Thus, to extent the title of Petitioner's stated ground for relief may suggest that he is claiming that he did not knowingly and voluntarily agree to the terms of his appeal and collateral attack waiver, that contention is clearly belied by the record.[9]

---

[9]The exact title of Petitioner's stated claim for relief is: "Petitioner's Guilty Pleas and Appeal Waiver Were Involuntarily Entered as a Result of Ineffective Plea Counsel." (Doc. no. 1, p. 4.) The three specific subparts of this claim were set forth supra, Part I.D, and are addressed in detail infra, Part II.C.2.

In this instance, however, that does not end the Court's inquiry because Petitioner claims that he received ineffective assistance of counsel when deciding whether to enter his guilty pleas, an assertion which, if found to have merit, would cast doubt not only on the validity of appeal and collateral attack waivers, but also the knowing and voluntary nature of the entirety of the guilty pleas. Indeed, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005); see also Vaca-Ortiz, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement."[10] Vaca-Ortiz, 320 F. Supp.2d at 1365 (citing Bushert, 997 F.2d at 1350-51). However, as discussed *infra*, the Court determines that Petitioner's ineffective assistance of counsel claims form no basis for relief.

---

[10]As noted above, the government acknowledges that Petitioner's "carefully structured" ineffective assistance of counsel claims are not barred by the collateral attack waiver. (Doc. no. 10, p. 4.)

### C. Ineffective Assistance of Counsel Claims Lack Merit

#### 1. Under <u>Strickland v. Washington</u>,[11] Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland. <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

---

[11]<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 484 (2012). Importantly, bare allegations that a petitioner would not have pleaded guilty will not suffice. Freeman v. United States, 1:06-CR-0185-TWT-JFK, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011), adopted sub nom by United States v. Warner-Freeman, 2011 WL 2680509 (N.D. Ga. July 7, 2011). In assessing whether a petitioner has

made the requisite showing in a guilty plea case, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, a petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

### 2. Petitioner Has Not Established Entitlement to Relief Based on Claims that He Was Misadvised About Any Aspect of Sentencing

All of Petitioner's alleged ineffective assistance of counsel claims hinge in some form or another on the purportedly bad advice Petitioner contends he received from Mr. Theodocion regarding sentencing matters: potential sentence after entry of guilty pleas versus sentence after going to trial; acceptance of responsibility; and, sentencing for two cases at the same time. Tellingly, Petitioner initially provided absolutely no detail about what advice he received, only that it was incorrect, and therefore his pleas were involuntary. (See doc. no. 1, p. 4). When Respondent pointed out the dearth of details about these claims, Petitioner filed a reply stating, "for arguments sake," that Mr. Theodocion advised him that by entering a guilty plea he risked no sentence higher than 87 months (based on an acceptance of responsibility reduction and concurrent imposition of sentences for both cases), and that if he proceeded to trial, Petitioner would be sentenced to forty years of imprisonment. (Doc. no. 11.) The Court agrees that the lack of detail regarding the purported mis-advice is fatal to an ineffective assistance of counsel claim because there is

no information to evaluate, and, as explained above, conclusory allegations do not warrant a hearing, Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). However, even if the Court were to accept the contentions in Petitioner's reply, "for the sake of argument," these claims all revolve around sentencing information and fail for lack of prejudice.

So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Shedrick, 493 F.3d 292, 300 (3d Cir. 2007) (district court correctly denied § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for an enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [the petitioner's] potential sentence"); United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (*per curiam*) (affirming district court's refusal to allow withdrawal of guilty plea with finding that defendant failed to show plea was not entered knowingly and voluntarily where judge at plea hearing set forth maximum possible penalties and fact that court was not bound by counsel's sentencing estimates).

At the Rule 11 proceedings in this case, prior to accepting Petitioner's guilty pleas, Judge Hall reviewed the possible statutory penalties for all charges to which Petitioner was

pleading guilty, in both CR 109-035 and CR 110-073. Rule 11 Tr., pp. 29-30.[12] Judge Hall informed Petitioner of the minimum five-year sentence and maximum forty-year sentence of imprisonment in CR 109-035, and the maximum ten-year sentence of imprisonment on each count in CR 110-073; when asked if he understood the possible penalties, Petitioner affirmed that he did. Id. at 29-30. Judge Hall also reviewed the advisory nature of the Guidelines, asked if Petitioner had discussed the Guidelines with Mr. Theodocion, and emphasized that he - Judge Hall - would determine the final sentence. Id. at 32-33. Judge Hall specifically asked Petitioner, "Did anyone promise, predict, or make a prophecy that you would receive a specific sentence in this case?" Id. at 33. Petitioner swore under oath, "No, sir." Id. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Given Petitioner's sworn testimony that he had not been promised a specific sentence and that he understood the full extent of the possible penalties that Judge Hall could impose at sentencing, he cannot now claim in these collateral proceedings that Mr. Theodocion made specific, incorrect promises about how Petitioner would be sentenced.

Likewise, the plea agreements that Petitioner signed stated that Judge Hall was "free to impose any sentence authorized by law up to the statutory maximum sentence" and that

---

[12]Petitioner was also informed of the statutory penalties he faced when he was arraigned in both cases. CR 109-035, doc. nos. 2, 6; CR 110-073, doc. nos. 2, 7.

his offense level and criminal history "may differ from that estimated or projected by defendant's counsel or the United States Attorney."[13] CR 109-035, do. no. 128, pp. 4, 6; CR 110-073, doc. no. 42, pp. 4, 5.  Thus, even if the Court were to accept Petitioner's belated contentions that he was misadvised on multiple fronts regarding his potential sentence, no prejudice inured to Petitioner because any mis-advice was "cured" before he entered his guilty pleas by the information provided by Judge Hall and in the written plea agreements. See Wilson, 245 F. App'x at 11-12. At the Rule 11 proceedings, Judge Hall clearly stated that only he could decide Petitioner's sentence, and he spelled out the possible penalties Petitioner faced; Petitioner swore that he understood; and, Petitioner still chose to plead guilty.[14] Therefore, Petitioner fails to carry his heavy burden under the second prong of Strickland, and he is not entitled to relief on any of his ineffective assistance of counsel claims. Hill, 474 U.S. at 59; Brooks, 719 F.3d at 1300.

**D.     Petitioner's Guilty Pleas Were Knowingly and Voluntarily Entered**

Having determined that Petitioner did not receive constitutionally ineffective assistance of counsel, the Court will lastly address any implication derived from the § 2255 motion that

---

[13]Moreover, the PSI did not include an acceptance of responsibility reduction and explained that the reduction was not recommended because Petitioner committed new criminal offenses (forming the basis for the charges in CR 110-073) while he was on pretrial release for the drug offense charged in CR 109-035. PSI ¶¶ 21, 22, 45. Petitioner did not object to that portion of the PSI, and although the parties argued at sentencing about the application of a reduction for substantial assistance to the government, Sent. Tr., pp. 36-44, the issue of acceptance of responsibility was never raised.

[14]Petitioner does not provide any details regarding Mr. Theodocion's purported promise of a forty-year sentence if Petitioner went to trial. (Doc. no. 11, ¶ 4.)

Petitioner's guilty pleas were otherwise not knowingly and voluntarily entered. The record is clear that to the extent Petitioner may have been trying to raise a generalized challenge to the knowing and voluntary nature of his guilty pleas, any such arguments are without merit.

### 1.    Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense."
>
> Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of

the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted).

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea

Judge Hall informed Petitioner in clear terms of the charges to which he was pleading guilty, as well as the maximum penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charges and the maximum penalties. Rule 11 Tr., pp. 13-15, 29-30. Petitioner also testified that his conduct would satisfy the elements of the crimes to which he was pleading guilty, and he admitted to the facts presented by the government as the factual basis for the pleas. Id. at 15, 24. Judge Hall provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and

Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 10-13. Petitioner testified that no one had made him any promises other than those contained in the plea agreements to get him to plead guilty, nor had anyone forced or pressured him to do so. Id. at 29, 33. Petitioner also testified that he had reviewed both plea agreements with Mr. Theodocion before he signed them and that he was satisfied with the help he had received from Mr. Theodocion. Id. at 10, 26, 27, 28. Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty pleas, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty pleas. See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim that his guilty pleas were not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. As noted above, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Accordingly, the Court finds that Petitioner is not entitled to relief on any argument set forth in his § 2255 motion.

### III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the

§ 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be

**CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 3rd day of March, 2014, at

Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE